## Mrs. Fannie Katz *v.* James W. Johnston, Appellant.

*Contract—Fraud—Equity.*

Plaintiff and defendant entered into an agreement in writing to buy land and divide it into building lots for sale at a profit. Plaintiff was to furnish all of the hand money for the purchase, as well as the money to make the deferred payments and was to be repaid out of the first sales, and after such repayment she was to receive two thirds of the profits. Defendant negotiated the purchase of the property, and by a secret arrangement with the vendors received $500 out of the purchase money. Only a very small amount was realized from the sale of the lots, and plaintiff was obliged to pay the whole amount of the purchase money. In the meantime judgments had been entered against the defendant which he claimed were paid. On a bill in equity filed by the plaintiff against the defendant

the court decreed that the defendant should repay to the plaintiff the $500 which he had fraudulently obtained from the vendors, and that he should pay to her one half of the purchase money, or in lieu of such payments should execute to her a quitclaim deed of his interest in the land, and have the judgments against him satisfied of record. *Held*, that the decree was proper, and should be affirmed.

Argued Oct. 7, 1896. Appeal, No. 28, Oct. T., 1896, by defendant, from decree of C. P. No. 2, Allegheny County, Jan. Term, 1896, No. 187, on bill in equity. Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an account and for an injunction.

WHITE, J., filed the following opinion:

On the 28th day of March, 1893, the plaintiff and defendant bought from W. J. Dible and J. E. Hunter a piece of ground in Turtle Creek, this county, containing about one acre, and the deed was executed to them of that date. The deed is to them as joint tenants. The consideration specified in the deed is $5,500; to be paid, $2,500 cash, and the purchasers to assume the payment of a mortgage of $2,500, and also to give a promissory note for $500, payable at one year, with interest from date. In the deed it is recited that the purchasers assume a personal liability for the payment of a certain mortgage to Robert Caughey on the premises for $2,500.

Mrs. Katz, the plaintiff, paid the $2,500 cash. Both the plaintiff and defendant signed the note for $500. Johnson paid nothing at the time and has paid nothing since the deed was delivered. Mrs. Katz subsequently paid the note for $500, with the accrued interest on it, at the time it was paid amounting to $530. That amount was received by Mr. Dible, but immediately paid over to Mr. Johnston.

On the 1st day of May, 1893, an agreement was entered into carrying out the verbal understanding between the parties prior to that and about the time the deed was delivered. That agreement recited the conveyance to them from Dible and Hunter, and says:

"Whereas, The consideration of $5,500 above mentioned for said piece of ground was paid to the grantors in said deed as

follows, viz : $2,500 in cash by the said Mrs. Fanny Katz, and $2,500 by the joint covenant of both of the parties hereto (which is contained in the above recited deed) to assume the payment of a certain mortgage and $500 by the promissory note of both of the parties hereto for the payment of said sum in one year from its date ; and

" Whereas, it is the purpose of the parties hereto to divide said piece of ground into lots and to sell the same as conveniently can be done to good advantage,

" Now this agreement witnesseth : (1.) That the said J. W. Johnston agrees and undertakes to manage said property and to make sales thereof, in lots, to the best advantage, and at such prices and upon such terms as shall be mutually satisfactory to the parties hereto, and agreed upon by them from time to time, and to act as the agent for procuring purchasers thereof, and to write all deeds and mortgages necessary in selling and conveying said property.

" (2.) That the sums received as purchase money for lots in said piece of ground, shall be applied in the first place to the discharge of the expenses of surveying, recording plans, releases, etc., and other expenses incidental to placing said property on the market, which the parties hereto may mutually determine to incur, and to the discharge of the promissory note and mortgage above referred to as a part of the consideration for said piece of ground, and afterward to the repayment to said Mrs. Fanny Katz of the sum paid by her in cash as above recited : viz : twenty-five hundred dollars with interest thereon from the date of payment.

" (3.) That after the discharge of the above recited expenses, incumbrances and obligations, with the interest thereon, and the repayment of the purchase money advanced by Mrs. Katz, as aforesaid, the profits arising from the joint undertaking of the parties hereto, shall be semi-annually divided and paid over to the parties hereto as follows, to wit: two-thirds of all such net profits to the said Mrs. Fanny Katz, and one-third of the said net profits to the said J. W. Johnston.

" (4.) All the covenants, stipulations and agreements herein shall be equally binding upon the parties hereto, their heirs, executors, administrators or assigns.

" Witness our hands and seals the day and year first above written."

Signed by the two parties, under seal.

A survey had been made and the property divided into twenty-four lots. On the 12th day of June, 1893, one lot was sold, on which two payments were made, amounting to $15.00. The second lot was sold on the 17th day of July, 1893, and $5.00 paid on that date, and also $5.00 paid on July 29, 1893, and another $5.00 paid February 6, 1894, since which time no payments have been made. A third lot was sold on or before March 16, 1894, and $15.00 paid on that date and $10.00 more last November, since this bill was filed. Five dollars was deposited on account of the sale of a fourth lot, but was forfeited, making the total amount of purchase money received $63.72. The expenses incurred in the management of the property, including taxes paid by Mrs. Katz, amount to the aggregate sum of $133.77. Deducting therefrom small items of credit for rent of the ground, etc., amounting to $36.50, leaves a balance due Mrs. Katz of $96.27. Mrs. Katz also paid the first two instalments of the Caughey mortgage of $1,000, and paid also interest on the same, $297.50. The next instalment of the mortgage will be due next February.

On the 11th day of December, 1893, two judgments were entered against Johnston by William McCune, one for $80.00 and the other for $300, which, according to the record, are still unsatisfied, although Johnston says they are paid. On the 15th day of January, 1893, A. I. Scott & Co. entered a judgment against Johnston of $534.50, and at once issued an execution thereon. This arrested the attention of Mrs. Katz. She immediately went to see Johnston, and that judgment on the record is satisfied. About the same time Johnston executed a deed for his interest in the property to D. S. Elliott. That deed was never delivered, and, Mrs. Katz learning about it, he gave it to her or her attorney.

A short time before this bill was filed, the plaintiff says in the bill that she discovered that a fraud had been perpetrated upon her, that Johnston was to receive $500, which he claimed as commission for effecting the sale to her ; and the bill is filed calling upon him to refund that $500, with interest, and also to restrain him from making sales or incumbering his interest in the property, and to make contribution for what Mrs. Katz has since had to pay on account of the purchase.

The defendant's position is that he was not to pay any money at all on the purchase, but that Mrs. Katz was to pay the whole purchase money, and he was to get one third of the profits for his time and services in managing the property and effecting sales.

### FINDING OF FACTS.

1. That the actual price of the ground was $5,000, instead of $5,500; that Dible and Hunter had authorized Johnston to act as agent in selling the property, or to sell it if he could realize to them $5,000; that if he could not sell it for more than that price he was to get no compensation, but if he could sell it for one hundred dollars ($100) or five hundred dollars ($500) more than $5,000 he could retain the excess for his services in making the sale.

2. That Johnston is not a regular real estate broker; he had a store in Braddock, and very near to his place of business is the store of Mr. Katz, the husband of the plaintiff in this action. He was engaged in some real estate speculation, but was not known as a regular real estate broker.

3. That the plaintiff's husband was her agent in this whole transaction. The money paid was Mrs. Katz's money, but he acted as her agent in engaging with Johnston and in effecting the purchase. His knowledge, therefore, is her knowledge of the transaction.

4. The defendant never made known to the plaintiff or to her husband his agreement with Dible and Hunter, and neither the plaintiff nor her husband had any knowledge of such an arrangement, or that Johnston was to get any compensation whatever in the matter. They regarded him as an equal purchaser with the plaintiff, and supposed that the actual price to be paid to Dible and Hunter was $5,500.

5. That when the agreement was made for laying the property out into lots and selling them, both the plaintiff and defendant expected a speedy sale, and expected that the proceeds of sale would be amply sufficient to pay the accruing instalments and interest on the mortgage, pay all expenses, and refund to Mrs. Katz the $2,500 she had paid, with the interest; and it was not expected at the time that Mrs. Katz would have to pay any more money, but that the proceeds of the sales would be sufficient for all purposes, but in consequence of the depression in the times

and the difficulty in effecting sales the arrangement failed in this, that very few lots were sold, and none except those already indicated.

6. Mr. Johnston since the bill was filed says he procured certain purchasers for certain lots, at certain prices, but Mrs. Katz was unwilling to accept the terms proposed for the sale of those lots; and under the agreement and circumstances of the case, she was not bound to accept those terms or to make sales on the conditions that Johnston had proposed.

7. From the condition of the market and surrounding circumstances, it is not at all probable that lots can be sold at prices which would refund to Mrs. Katz the money she has already expended, and to meet the payments yet to be met on the mortgage within any reasonable time—perhaps not within two, three or four years to come—the payments on the mortgage will have to be provided for other than by the sale of lots.

8. The provision in the agreement that Johnston was to receive one third of the profits was based upon the idea that he would have to pay no money; that the sale of the lots would be sufficient to refund to Mrs. Katz what she had paid, and also meet all payments of expenses, and the payments on the mortgage.

9. Johnston, under the deed and arrangement between the parties, was jointly liable with Mrs. Katz to pay one half of the purchase money of the property. The provision in regard to one third of the profits was based on the idea that the sales of lots would be sufficient to refund the money to pay her, and also meet all contingencies, so that Johnston would not, in that way, have to advance any money. Mrs. Katz having advanced the $2,500, and in that way secured the purchase under the arrangement, would receive two thirds of the profits.

10. The concealment by Johnston of the arrangement between him and Dible and Hunter as to compensation, and holding out to Mrs Katz or to Katz, her husband, that the consideration of the purchase was $5,500, and not revealing to them the fact that he had any personal interest in it, or was to receive any commission, was a fraud on Mrs. Katz. In good faith and honesty he was bound to communicate the fact that he was to receive a commission on the sale, and the amount of it.

11. His executing a deed to Elliott was intended to hinder

and delay his creditors or to protect Elliott on some indorsement, but executing it without the knowledge or the consent of Mrs. Katz was a fraud upon her. According to his testimony that he was to pay nothing at all, he should not in any manner have incumbered his interest in the property, which, according to the deed of record, was a one half interest.

### CONCLUSIONS OF LAW.

The defendant, Johnston, having perpetrated a fraud upon Mrs. Katz in reference to the $500, should refund the same to her, with interest, and according to the terms of the note, it bore interest from date; i. e., the 28th day of March, 1893. Mrs. Katz had no knowledge or information as to the claim of Johnston for commission until after that note had been paid.

According to the deed and the testimony, the defendant was a tenant in common with Mrs. Katz in the purchase of the property, each having a one half interest. He was liable to pay one half the entire purchase money, although by the agreement between them Mrs. Katz paid the hand money, $2,500, and he was also equally liable with her for the payment of the Caughey mortgage. The personal covenant in the deed is of both parties. He signed the $500 note as if he were equally liable with her for the payment of that note.

The change in circumstances and in the times renders it now impossible to carry out the agreement of May 1, 1893. There is no probability of the lots being sold to meet the future payments of that mortgage, and in that aspect of the case Johnston is equally liable with Mrs. Katz as the purchaser of the property, and he must pay over to her the one half of all that she has paid up to this time, and be responsible for the one half that may fall due hereafter. Good faith to her also requires that he shall remove any liens that are on his half interest in this property.

Under the agreement of May 1, 1893, both parties must agree to any sale of lots. The difficulty of carrying out that agreement when Johnston had no money whatever in the property now and the change of times makes it almost certain that the parties cannot agree, and that Johnston in his agency or management of the property will accomplish nothing, and it would be unjust for Mrs. Katz to advance all future payments on that

property and lie out of the money that she has advanced for an indefinite and uncertain period of time in the future. Even then there is no certainty that there will be any profits realized after sales.

Johnston said that the property was worth $13,000, but that was a mere guess and there was no evidence that would justify any such opinion, and the fact that for two and one half years only four lots have been sold out of twenty-four, and only $62.00 realized on all of them, is satisfactory evidence that it will require years, perhaps, to effect sales, and it is very uncertain whether there will be any profits at all realized in the end.

Johnston must do one of two things : He must refund to Mrs. Katz the $500, with interest on it from the 28th day of March, 1893, and one half of what she has had to pay on the mortgage, principal and interest, and also remove the liens that are now on his portion. He says that these two judgments remaining, amounting to $380, are paid, but they remain unsatisfied on the record. If they have been paid they can easily be marked satisfied upon the record—or at his election he may execute a quitclaim deed to Mrs. Katz for the property, retaining the $500, which would be a most liberal compensation in the way of commissions for effecting the sale, and also an ample compensation to him for all his time and labor in trying to effect sales. That should be done within thirty days from this date.

Let a decree be drawn in favor of the plaintiff as indicated in this opinion, and also an injunction against Johnston restraining him from making any conveyance of his interest in the property or in any way incumbering it, the costs to be paid by him.

### DECREE.

And now, December 20, 1895, this cause came on to be heard, upon bill, answer and replication, and testimony taken in open court ; and after argument by counsel and upon consideration it is ordered and decreed :

1. That James W. Johnston, the defendant, pay to the plaintiff one half of the several instalments of principal and interest of the mortgage of Robert Caughey et. al., paid by the plaintiff, with interest thereon from the dates of said payments, and amounting to the sum of $702.95, as shown by the calculation

attached hereto and made a part hereof ; without prejudice to the right of said defendant to be repaid the same with interest under the terms of the written agreement of May 1, 1893, as justice and equity may require.

2. That James W. Johnston, the defendant, pay to the plaintiff the amount fraudulently obtained and appropriated by him to his own use on March 28, 1894, (being the note to Dible and Hunter, with its interest paid on that date), being $530, with interest thereon from the date of payment and amounting to the sum $584.95, as shown by said calculation.

3. That said James W. Johnston, the defendant, be restrained and enjoined from conveying or in any other manner incumbering his interest in the tract of land purchased from Dible and Hunter by deed dated March 28, 1893, until said Johnston has paid to plaintiff the said sums of money hereinbefore directed to be paid, and aggregating the sum of $1,287.90.

4. That if the said James W. Johnston, at his election, shall within thirty days from the date of this decree, deliver to the prothonotary of this court a quitclaim deed, duly executed by himself and wife, in favor of the plaintiff, for all his interest in said tract of land, and cause the two judgments in favor of William McCune to be satisfied of record, the said deed shall be a discharge of the defendant, of and from the sums hereinbefore directed to be paid by him, and of and from all further liability to the plaintiff out of the transactions and dealings set forth in the bill, and upon the entry of a proper receipt by the plaintiff or her attorney, upon the docket, said deed shall be delivered by the prothonotary to her.

5. That the defendant pay the costs in this cause.

*Error assigned* among others was above decree.

*James R. Macfarlane*, with him, *E. F. Duffy*, for appellant.— On the face of the bill the court had no jurisdiction, and the plaintiff had an adequate remedy at law : Adams' App., 113 Pa. 449 ; Meeson v. Kaine, 63 Pa. 335 ; Clarke v. Sidway, 142 U. S. 682 ; Neill v. Shamburg, 158 Pa. 263 ; Walker v. Tupper, 152 Pa. 1 ; Bank v. Osborne, 159 Pa. 10 ; Howell v. Kelly, 149 Pa. 473 ; Pittsburg & Connellsville R. R. Co.'s App., 99 Pa. 177 ; Paton v. Clark, 156 Pa. 49.

There can be no question that the answer is responsive: Eaton's App., 66 Pa. 483; Burke's App., 99 Pa. 350; Fidelity Co. v. Weitzel, 152 Pa. 498.

That there is no fiduciary relationship between tenants in common further than that a purchase by one inures to the benefit of the other or some similar obligation, is held in the case of Neill v. Shamburg, 158 Pa. 263.

Defendant was not liable to plaintiff, or, at the most, only for one third: Collier on Partnership, sec. 309; Lake v. Gibson, 1 Leading Cases in Equity, 264; 1 Pomeroy's Equity, sec. 408.

It is a question whether defendant had any interest in the real estate under the agreement, for he had only an interest in contingent profits to be thereafter made: Benjamin v. Zell, 100 Pa. 33.

There should have been a preliminary decree for an accounting: Collyer v. Collyer, 38 Pa. 257; Dampf's App., 106 Pa. 72; Reeder v. Trullinger, 151 Pa. 287.

*William Yost,* for appellee.—The court had jurisdiction: 1 Spencer on Equitable Jurisdiction, 661; Johnston v. Price, 172 Pa. 427.

If two persons jointly purchase an estate and pay an unequal proportion of the purchase money and take the conveyance in their joint names, they are deemed to purchase as in the nature of partners: Wright v. Wright, 59 How. 186; 2 Story's Eq. Jur., sec. 1, 206; Walker v. Tupper, 152 Pa. 8.

But it is said the plaintiff had an adequate remedy at law for contribution, by reason of the payment of the many installments of the mortgage by her. The proposition is refuted by many decisions: Crow v. Green, 111 Pa. 637; Sadler v. Nixon, 5 Barn. & Adolphus, 936; Leidy v. Messenger, 71 Pa. 177; Murray v. Herrick, 171 Pa. 21.

The relations of Mrs. Katz and the appellant in the entire transaction were of a fiduciary and confidential character: King v. Barnes, 109 N. Y. 285; 1 Story on Eq. Jur. sec. 451.

Cases of account between tenants in common, between joint tenants, between partners, between part owners of ships, fall under the like consideration: Dyckman v. Valiente, 42 N. Y. 564.

The fraud perpetrated by defendant could only have been

properly investigated in a court of equity: Neill v. Shamburg, 158 Pa. 271; Bierbower's App., 107 Pa. 14; Harper's App., 109 Pa. 9; Ahl's App., 129 Pa. 49; McGowin v. Remington, 12 Pa. 56; Allison's App., 77 Pa. 221; Adams's App., 113 Pa. 449.

The defendant was liable for the fraudulent taking of commissions. He was also liable for one half of the mortgage installments: Wright v. Monongahela Nat. Gas. Co., 2 Super. Ct. 223.

PER CURIAM, November 9, 1896:

We find no error in the proceedings leading up to the decree from which this appeal was taken, nor in the decree itself. The findings of fact were amply warranted by the pleadings and proofs; and the conclusions drawn from the facts thus established appear to be substantially correct. On these findings and legal conclusions of the court below, the decree is affirmed and appeal dismissed with costs, to be paid by appellant.